IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**BLACKHAWK MINING, LLC,**
**Employer Below, Petitioner**

**FILED**
**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-184**          (JCN: 2021020512)

**HARRIS ARGABRIGHT,**
**Claimant Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Blackhawk Mining, LLC ("Blackhawk Mining") appeals the March 27, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Harris Argabright timely filed a response.[1] Blackhawk Mining did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and authorizing an MRI of the lumbar spine.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Argabright, an electrician for Blackhawk Mining, completed an Employees' and Physicians' Report of Occupational Injury or Disease dated February 26, 2021, which stated that he sustained injuries to his lower back and pelvic area while at work on February 25, 2021, when he was tightening a strap and felt a pulling sensation. The physician's portion was completed by personnel at Family HealthCare Associates on February 26, 2021, and the diagnosis was listed as lumbar sprain.

On February 26, 2021, Mr. Argabright underwent an x-ray of his lumbar spine, which revealed no acute lumbar spine abnormality; minimal grade 1 retrolisthesis of L3 on L4 with mild L3-4 disc space narrowing that was about the same as prior x-rays on June 4, 2013; mild L5-S1 disc space narrowing; and bilateral facet arthropathy at L5-S1 that was about the same as prior x-rays on June 4, 2013.

---

[1] Blackhawk Mining is represented by Jeffrey B. Brannon, Esq. Mr. Argabright is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

By order dated March 8, 2021, the claim administrator authorized a lumbar spine MRI without contrast but did not determine the compensability of Mr. Argabright's claim. Mr. Argabright underwent the MRI on March 9, 2021, which had the impression of T11-T12 narrowing of the disc space, degenerative disc desiccation, and the suggestion of a mild disc bulge; minimal to mild disc bulges from L2-L3 to L5-S1 with no focal disc protrusion seen in the lumbar spine; hypertrophy of the posterior elements at several levels; relatively mild acquired narrowing of the canal at L5-S1 without central spinal stenosis; narrowing of the neural foramina, especially at L4-L5 and L5-S1; and of an incidental note, describing a small single hyperintensity in each kidney that may reflect cysts. It was noted that a non-emergent renal ultrasound might be helpful for further evaluation. A comparison was made with the lumbar spine radiographs from February 26, 2021, and thoracic spine radiographs from June 4, 2013.

On April 5, 2021, the claim administrator issued an order holding the claim compensable for lumbar sprain/strain.

On May 11, 2021, Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME") of Mr. Argabright, who reported low back pain with radiation to the left lower extremity. Dr. Mukkamala diagnosed lumbar sprain superimposed upon preexisting, noncompensable degenerative spondyloarthropathy. Dr. Mukkamala opined that Mr. Argabright had reached maximum medical improvement ("MMI") for the compensable injury. Further, Dr. Mukkamala opined that the lumbar sprain did not preclude Mr. Argabright from returning to work at full duty with no restrictions; that he did not require any further medical treatment; and that there was no indication for a referral to Rajesh Patel, M.D. Further, Dr. Mukkamala stated that there was no objective medical evidence of radiculopathy or spinal instability, and, as such, Mr. Argabright did not require any surgical treatment. Dr. Mukkamala concluded that Mr. Argabright had received adequate physical therapy and there was no need for further treatment. By order dated May 17, 2021, the claim administrator denied the request for a referral to Dr. Patel based on Dr. Mukkamala's report. Mr. Argabright protested this order.

On May 13, 2021, Mr. Argabright was evaluated by Robyn Miller, PTA. Mr. Argabright reported that he had seen improvements since coming to physical therapy, but that he did not feel like he did before the accident. Ms. Miller noted that Mr. Argabright was still suffering from low back pain. Mr. Argabright was discharged to a home exercise program on May 24, 2021.

On June 21, 2021, Michael Muscari, M.D., Mr. Argabright's treating physician, completed a Diagnosis Update form, which requested that the secondary diagnoses of disc bulges at L2, L3, L5, and S1 be added as compensable conditions in the claim.

By order dated July 1, 2021, the claim administrator denied the request from Dr. Muscari to add the diagnoses of disc bulges at L2, L3, L4, L5, and S1 as compensable

2

conditions in the claim. An OOJ decision dated May 19, 2022, reversed the claim administrator's order and added the diagnoses of disc bulges at L2, L3, L4, L5, and S1 as compensable conditions in the claim. This decision also reversed the claim administrator's May 17, 2021, order and granted authorization for a referral to Dr. Patel. This decision was affirmed by the Board by order dated October 21, 2022.

On January 15, 2022, Michael Brooks, M.D., completed an age of injury analysis report, which considered the March 9, 2021, MRI of Mr. Argabright's lumbar spine. Dr. Brooks opined that these findings were chronic and related to degenerative disc disease and facet joint arthrosis at L2-3, mild to moderate central canal stenosis at L4-5, and mild to moderate central canal stenosis and moderate bilateral neuroforaminal narrowing, degenerative disc disease, and facet joint arthrosis at L5-S1.

A May 31, 2022, MRI of Mr. Argabright's lumbar spine revealed mild canal stenosis at L4-L5 and central disc protrusion at L5-S1.

In an October 31, 2022, progress note, Dr. Patel stated that Mr. Argabright had excellent relief with the epidural injection; that he felt more functional and markedly improved after the injection; that he got better relief with the injection than with medial branch blocks; and that it would be reasonable to try the epidural injections again. Dr. Patel noted that if Mr. Argabright did not do well with the epidural injections, they would consider doing a lumbar decompression versus decompression and fusion.

On November 4, 2022, Dr. Patel performed a bilateral transforaminal epidural injection at L5-S1 for the diagnoses of lumbar sprain, lumbar disc protrusion at L5-S1, and lumbar radiculitis. On December 7, 2022, Mr. Argabright followed up with Dr. Patel, and reported that while he experienced short term relief from the injections, he was having some pain in his back with extension. Dr. Patel noted that this was consistent with facet mediated pain, and that it might be reasonable now to try some medial branch blocks.

On December 28, 2022, Mr. Argabright underwent an EMG/NCS. Barry Vaught, M.D., reviewed the studies and indicated that there was electrophysiologic evidence for an active L5-S1 radiculopathy on the left, that there was no evidence of L5-S1 radiculopathy on the right, and that there was no evidence for diabetic polyneuropathy.

Mr. Argabright was seen by Dr. Patel on February 27, 2023, who assessed lumbar disc protrusion at L5-S1, bilateral lateral recess narrowing at L4-L5, bilateral lateral recess narrowing at L5-S1, bilateral neural foraminal narrowing at L5-S1, lumbar facet sprain, lumbar sprain, and L5-S1 radiculopathy. Dr. Patel noted that there were some objective findings of radiculopathy on the EMG study, and opined that radiculopathy was compensable and should be added to the claim.

Mr. Argabright was again seen by Dr. Patel on June 7, 2023. Dr. Patel assessed lumbar disc protrusion at L5-S1, lateral recess narrowing bilateral L4-L5, bilateral recess narrowing at L5-S1, left greater than right side, bilateral neural foraminal narrowing L5-S1, lumbar facet sprain, and left L5-S1 radiculopathy. Dr. Patel again opined that Mr. Argabright would benefit from epidural injections. Dr. Patel's August 28, 2022, progress note indicated that Mr. Argabright was still having lumbar spine pain, his last lumbar spine MRI was in 2022, and that an MRI of the lower back would be helpful to evaluate the disc protrusions and make sure there is no interval change.

By order dated September 19, 2023, the claim administrator denied Dr. Patel's request for an MRI of the lumbar spine. Mr. Argabright protested this order.

A Board of Review order dated September 21, 2023, reversed the claim administrator's order of February 3, 2023, and authorized bilateral medial branch nerve blocks at L3-L4, L4-L5, and L5-S1.

Dr. Mukkamala performed an additional IME of Mr. Argabright on November 7, 2023, and diagnosed a lumbar sprain/strain superimposed on preexisting noncompensable degenerative lumbar spondyloarthropathy, for which he had reached MMI. With regard to the disc bulges at L2, L3, L4, L5, and S1, Dr. Mukkamala opined that there was an exacerbation but not an aggravation, and that the ongoing conditions were causally related to the noncompensable preexisting degenerative spondyloarthropathy. Dr. Mukkamala opined that there was no objective evidence of radiculopathy and no evidence of loss of motion segment integrity, and that there was no indication of need for a repeat MRI.

By order dated March 27, 2024, the Board reversed the claim administrator's order, dated September 19, 2023, and granted authorization for an MRI of the lumbar spine. The Board noted that Dr. Patel stated that Mr. Argabright continued to have lumbar pain, and recommended an MRI of the lower back to evaluate disc protrusions and to make sure there is no interval change. Further, the Board stated that pursuant to this Court's decision in *Blackhawk Mining, LLC v. Argabright*, 2023 WL 3167476 (W. Va. Ct. App. 2023)[2], Mr.

---

[2] In *Blackhawk Mining, LLC v. Argabright*, 2023 WL 3167476 (W. Va. Ct. App. 2023), this Court addressed the issue of compensability of Mr. Argabright's disc bulges. This Court reversed the Board's October 21, 2022, order, in part, and found that it erred in summarily concluding that Mr. Argabright's preexisting disc bulges were compensable. This Court affirmed the Board's order in part and concluded that treatment of the newly symptomatic disability with a referral to Dr. Patel was appropriate, as Mr. Argabright's preexisting discs and degenerative disc desiccation were asymptomatic prior to the compensable injury, and the treatment of his pain flowed from the compensable injury, not the preexisting condition. This decision was affirmed by the Supreme Court of Appeals of

Argabright is entitled to treatment for the pain that developed following the compensable injury. It is from this order that Blackhawk now appeals. Blackhawk's appeal is limited to the issue of authorization for an additional MRI of the lumbar spine.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law.
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Blackhawk Mining argues that an additional MRI of the lumbar spine is not medically necessary or reasonably required treatment for the compensable condition in this claim. Blackhawk Mining also asserts that the Board's decision was contrary to this Court's prior opinion. Further, Blackhawk Mining asserts that the Board ignored the Supreme Court of West Virginia's holding in Syllabus Point 5 of *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022) that the presumption of disability created is rebuttable by the employer. We disagree.

The claim administrator must provide medically necessary and reasonably required medical treatment for a compensable injury. *See* West Virginia Code § 23-4-3 (2005); West Virginia Code of State Rules § 85-20-9.1 (2006).

Moreover, as set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones

---

West Virginia in *Argabright v. Blackhawk Mining, LLC*, No. 23-381, 2024 WL 3984505 (W. Va. Aug. 27, 2024) (memorandum decision).

5

which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and authorizing an MRI of the lumbar spine.

Here, the record supports the Board's conclusion that an MRI of the lumbar spine is medically necessary and reasonably required treatment for the compensable injury. Dr. Patel noted that Mr. Argabright continued to have lumbar pain and opined that an MRI of the lumbar spine would be helpful to evaluate his disc protrusions and to make sure that there is no interval change. Further, Mr. Argabright's symptoms in his back were asymptomatic prior to the compensable injury. Following the compensable injury, Mr. Argabright developed pain in the areas affected by the preexisting conditions. Although Blackhawk Mining argues that the Board's order is contrary this Court's prior opinion, the referral to Dr. Patel was initially authorized by this Court. Based on the foregoing, we conclude that the Board was not clearly wrong in finding that the MRI of the lumbar spine was medically necessary and reasonably required treatment for the compensable injury.

Finally, Blackhawk Mining argues that the Board's decision ignores Syllabus Point 5 of *Moore v. IGC Tygart Valley*, 247 W. Va. 292, 879 S.E.2d 779 (2022), which held that:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive, it may be rebutted by the employer.

We find no merit in this argument, as both this Court and the Board found that Mr. Argabright's pain flows from the compensable injury. Further, a *Moore* analysis would not affect the outcome here, as compensability is not at issue in this appeal. Instead, the issue on appeal is authorization for an MRI of the lumbar spine.

Accordingly, we affirm the Board's March 27, 2024, order.

Affirmed.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear